IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ADMINISTRATIVE SEARCH OF:<br><br>**Nutrition Bar Confectioners, 12351 State Route 34, Cato, New York 13033** | Case No. 5:25-SW- 211   (TWD)<br><br>**Filed Under Seal** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ADMINISTRATIVE SEARCH OF BUSINESS**

Undersigned counsel for the United States of America submit this memorandum of points and authorities in support of an application for a civil administrative search warrant, pursuant to Section 287 of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1357, authorizing agents of the U.S. Immigration and Customs Enforcement (ICE); Homeland Security Investigations (HSI); United States Border Patrol (USBP); and other federal law enforcement officers and federal Task Force Officers assisting them in a planned search warrant operation (collectively, "Immigration Authorities")[1] to enter the premises known as Nutrition Bar Confectioners, 12351 State Route 34, Cato, New York 13033 (hereinafter, the "PREMISE").

Through the civil administrative search warrant application, Immigration Authorities seek to enter the PREMISE, including its parking lot and surrounding land, to search for persons believed to be aliens in the United States without legal authority, and to take such actions, with respect to those aliens, as are authorized by law.[2]

---

[1] Other federal law enforcement agencies which are not part of the Department of Homeland Security are also expected to participate in the planned search warrant operation. Local law enforcement officers will be present in marked unit and will be helping with traffic control and officer safety reasons, but local law enforcement officers are not expected to go inside the facility during the warrant.

[2] Separately, Immigration Authorities are also seeking a search and seizure warrant for the PREMISE under Federal Rule of Criminal Procedure 41, in relation to documents and records held by or at the

The Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1101 *et. seq.*, was passed by Congress as a means to restrict illegal immigration into the United States. The Act grants the Department of Homeland Security (DHS) general powers to investigate violations of immigration laws.[3] Those powers include the authority to question aliens concerning their status and to arrest, without a warrant, aliens illegally present in the United States. 8 U.S.C. § 1357.[4]

In addition, the Supreme Court has recognized the need for vigorous enforcement of immigration laws and has sought to strike a balance between that need and individual rights. *United States v. Martinez-Fuerte,* 428 U.S. 543 (1976); and *United States v. Brignoni-Ponce,* 422 U.S. 873 (1975).

---

PREMISE. While the Rule 41 warrant would authorize law enforcement officers to be present at the PREMISE and arguably would permit them, while there, to engage in consensual conversations with individuals on site and to detain individuals for whom they have or develop reasonable suspicion or probable cause of immigration law violations. However, it may take longer to speak to all the individuals on site than to seize the records, and some illegal alien employees at the PREMISE may not be near the location of the records sought to be seized under the Rule 41 warrant, Accordingly, the Government seeks a civil administrative warrant out of an abundance of caution and to ensure judicial authorization of the planned questioning of employees as described in this memorandum and in the application itself.

[3] The Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471; 116 Stat. 2135, 2136-37 (2002), abolished the Immigration and Naturalization Service (INS) and transferred responsibility for immigration enforcement to the Department of Homeland Security.

[4] 8 U.S.C. § 1357(a) provides in relevant part: "Any officer or employee of the Service authorized under regulations proscribed by the Attorney General shall have the power without warrant -

(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;
(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . ."

In a concurring opinion in *Almedia-Sanchez v. United States*, 413 U.S. 266 (1973), Justice Powell indicated that a showing of probable cause may enable immigration agents to obtain a warrant to assist an investigation in which the immigration agents use their statutory authority to question and detain aliens, *see id*. at 282-85 (Powell, J., concurring) (explaining by way of example that Border Patrol could "obtain advance judicial approval of the decision to conduct roving searches on a particular road or roads for a reasonable period of time").

In other contexts, courts have not hesitated to engage in statutory construction where reasonably necessary to permit administrative agencies to carry out the tasks assigned to them by statute. For example, in *United States v. Euge*, 444 U.S. 707 (1980), the Court held that while the tax code did not explicitly authorize the IRS to summon individuals to produce certain types of evidence, such authority "is necessary for the effective exercise of the Service's enforcement responsibilities," *id.* at 711. The *Euge* Court explained that "this Court has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities[…], that authority should be upheld absent express statutory prohibition or substantial countervailing policies." *Id.*; *see also Lovgren v. Byrne*, 787 F.2d 857, 864 (3d Cir. 1986) (interpreting the Fishery Conservation and Management Act of 1976, 16 U.S.C. § 1801 *et seq.*, which authorizes warrantless inspections of vessels, to implicitly authorize warrantless dock inspections, because otherwise "the agency's efforts to gather accurate information would be substantially frustrated"); c*f. Dalia v. United States*, 441 U.S. 238, 249-254 (1979) (interpreting 18 U.S.C. § 2518 to permit covert entry in order to install bugging devices because "(t)o read the statute otherwise would be to deny the 'respect for the policy of Congress [that] must save us from imputing to it a self-defeating, if not disingenuous purpose'" (441 U.S. at 254, *quoting Nardone v. United States*, 308 U.S. 338, 341 (1939)).

The right of entry to private property as requested here, consistent with constitutional limitations, is no less necessary to enable DHS to carry out its remedial responsibilities under the Immigration and Nationality Act than the powers implied in the above cases were to the implementation of the statutory responsibilities of the agencies there involved.

The use of civil orders to authorize the entry upon premises where illegal aliens are believed to be present and to permit their questioning and arrest, where appropriate, was expressly sanctioned by the landmark decision in *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1219-1227 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 940 (1982). In upholding a civil warrant[5] as "reasonable" within the meaning of the Fourth Amendment, the court held that the warrant need not specifically name the suspected illegal aliens as long as the warrant and accompanying affidavits narrowed down the field of potentially vulnerable persons to those whom Immigration agents might reasonably believe to be aliens. *Id*. at 1226. As such, *Blackie's* upheld the use of a civil order to gain entrance to premises to search for, question, and arrest unnamed aliens who were believed to be present on the premises. *Id.*

The Ninth Circuit reached a similar conclusion in *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547 (9th Cir. 1986):

> We have held that an application for a search warrant "must have sufficient specificity to enable the judge to make an *independent determination* of whether probable cause exists and to prevent the agents from having uncontrolled discretion to rummage everywhere in search of seizable items once lawfully within the premises."

*Id*. at 552 (quoting *United States v. Condo*, 782 F.2d 1502, 1505 (9th Cir. 1986) (emphasis original)).

Further, the court in *Molders*' stated:

> The requirement to "identify the suspect(s) by name" or to provide "enough specific identifying information to assure that the search for that person is reasonably likely to result in finding that person" imposes an

---

[5] Such warrants are now commonly known as *Blackie's* warrants based on the name of the business involved in the original case.

> unreasonable and impractical burden on the INS. We agree (with the *Blackie's* court) that "warrants and accompanying affidavits [that] narrow down the field of potentially vulnerable persons to those employees whom INS agents might reasonably believe to be aliens" . . . satisfy the requirements of the Fourth Amendment even where the targeted persons are not identified by name.

*Id*. at 553 (quoting *Blackie's*, 659 F.2d at 1226).

A magistrate judge in the Southern District of Texas has denied an application for a Blackie's warrant and called into question the authority for it, but this decision is not binding or precedential. *See In re Sealed Search Warrant Application Civil Action No. 3:25-mc-05067*, --- F. Supp. 3d ---- (2025), 2025 WL 1499054 (S.D. Tex. May 27, 2025).

Congress has provided federal district courts with direct jurisdiction for penalizing certain immigration violations under 8 U.S.C. § 1324a(f), by enacting a criminal provision for a pattern or practice of knowingly hiring or continuing to employ aliens not authorized to work in the United States, *see* 8 U.S.C. § 1324a(f)(1); and a civil provision authorizing injunctive relief against individuals or entities who engage in a pattern or practice of knowingly hiring or continuing to employ aliens not authorized to work in the United States, *see* 8 U.S.C. § 1324a(f)(2).

Under the more flexible definition of probable cause applied in the civil context, the United States may obtain a civil administrative warrant by showing specific evidence of an existing violation or that the inspection will be conducted according to reasonable legislative or administrative standards. *See Blackie's*, 659 F.2d at 1222-25. As explained by the Supreme Court in the context of an administrative warrant to permit an inspection for OSHA violations in the absence of consent to search:

> Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment.]

*Marhsall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978) (citation omitted). In *Blackie's*, the INS similarly satisfied the non-criminal probable cause standard by submitting specific evidence that violations of the Immigration and Nationality Act were occurring on the premises to be searched. *See* 659 F.2d at 1226-27.

HSI Special Agent Andrew McCoy's affidavit filed in support of the proposed warrants presents specific evidence that violations of the immigration laws have occurred and are occurring on the PREMISE at Nutrition Bar Confectioners in Cato, New York. Agent McCoy's affidavit satisfies the standard set forth in *Blackie's*, as it establishes probable cause "that numerous persons working in nonpublic areas of the [business are] possibly illegal aliens, and [gives] credible reasons for the [affiant's] suspicions as well." *Blackie's*, 659 F.2d at 1226.

The purpose of the present application is to obtain authority to search the PREMISE described above. The authority of the Immigration Authorities to obtain and/or arrest aliens suspected of being in the United States illegally is established by statute and case law. During execution of a civil administrative search warrant such as the one requested, agents may engage in systematic consensual questioning of employees. *INS v. Delgado*, 466 U.S. 210, 216-19 (1984). It is well settled that agents may detain a person absent valid seizure or arrest warrants or valid exigent circumstances only if they possess reasonable, articulable and individualized suspicion of violations of immigration or criminal law. *See Blackie's*, 659 F.2d at 1221. Violations of immigration law include: (1) an alien's failure to carry on his or her person immigration documents required by law to be carried, 8 U.S.C. § 1304(e); and (2) reentry of a previously removed alien without proper approval, 8 U.S.C. 1326. If an alien claims to possess immigration documentation offsite and not in their possession, they may be detained in the context of a *Terry* stop "only so long as is necessary to carry out [the *Terry* stop's] purpose," and under such circumstances "the investigative methods used should be the least intrusive means reasonably available to confirm or dispel the officer's suspicion." *See Martinez v. Nygaard*, 831 F.2d 822, 827 (9th

Cir. 1987); *see also United States v. Machuca-Barrera*, 261 F.3d 425 (5th Cir. 2001) (addressing immigration checkpoint stops).

Agents may also make warrantless civil immigration arrests of aliens unlawfully present in the United States based on probable cause. *See* 8 U.S.C. § 1357(a)(2).

Based on the above-described points and authorities and the facts and information described in the accompany search warrant application, the United States respectfully requests that this Court issue a civil administrative warrant for the PREMISE as requested.

                              Respectfully submitted,

                              JOHN A. SARCONE III
                              Acting United States Attorney

                              /s/ Michael F. Perry
By:    _____
                              Michael F. Perry
                              Assistant United States Attorney
                              Bar Roll No. 518952